IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| SIERRA CLUB, INC. and SIERRA NEVADA FOREST PROTECTION CAMPAIGN, | ) ) ) | 2:04-cv-2114-GEB-DAD |
| Plaintiffs, | ) ) | ORDER |
| v. | ) ) | |
| DALE BOSWORTH, in his official capacity as Chief of the U.S. Forest Service; JOHN BERRY, in his official capacity as Forest Supervisor of the Eldorado National Forest; LAURIE TIPPIN, in her official capacity as Forest Supervisor of the Lassen National Forest; UNITED STATES FOREST SERVICE, an agency of the U.S. Department of Agriculture; ANN VENEMAN, in her official capacity as Secretary of the U.S. Dept. of Agriculture; and UNITED STATES DEPARTMENT OF AGRICULTURE, | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | |
| Defendants. | ) ) | |

Pending are cross-motions for summary judgment and

Plaintiffs' motion to supplement the Administrative Record ("AR").

Plaintiffs contend the categorical exclusion ("CE") established by the

United States Forest Service ("USFS") for fuel reduction projects

("Fuels CE") violates the National Environmental Policy Act ("NEPA");

and that the application of the Fuels CE to the timber project in the

1

Eldorado National Forest also violates NEPA.[1]  Defendants counter that the Fuels CE, and its application to the Eldorado National Forest projects do not violate NEPA and must be upheld.

I. BACKGROUND

A.  Overview of NEPA

NEPA, which is prescribed in pertinent part at 42 U.S.C. §§ 4321-4347, is the "basic national charter for protection of the environment."  40 C.F.R. § 1500.1.  NEPA's purpose is to "encourage productive and enjoyable harmony between man and his environment; to promote efforts which will prevent or eliminate damage to the environment and biosphere and stimulate the health and welfare of man; [and] to enrich the understanding of the ecological systems and natural resources important to the Nation . . . ."  42 U.S.C. § 4321. "NEPA is a procedural statute that does not 'mandate particular results, but simply provides the necessary process to ensure that federal agencies take a hard look at the environmental consequences of their actions.'"  High Sierra Hikers Ass'n v. Blackwell, 390 F.3d 630, 639 (9th Cir. 2004) (quoting Cuddy Mountain v. Alexander, 303 F.3d 1059, 1070 (9th Cir. 2004)).

NEPA requires "all agencies of the Federal Government" to include an environmental review document "in every recommendation or report on proposals for legislation and other major Federal actions significantly affecting the quality of the human environment."  42 U.S.C. § 4332(2)(C).  "In determining whether to prepare an

---

[1]   Plaintiffs' motion also addresses the application of the Fuels CE to a project in the Lassen National Forest; however, at the hearing on the motions held on July 18, 2005, Plaintiffs withdrew their challenge against the project in the Lassen National Forest since the USFS has decided not to proceed with that project.

2

environmental impact statement the Federal agency shall . . .
[d]etermine . . . whether the proposal is one which: (1) Normally
requires an environmental impact statement, or (2) Normally does not
require either an environmental impact statement or an environmental
assessment (categorical exclusion)."  40 C.F.R. § 1501.4.

A categorical exclusion is "a category of actions which do
not individually or cumulatively have a significant effect on the
human environment . . . and for which, therefore, neither an
environmental assessment [("EA")] nor an environmental impact
statement [("EIS")] is required."  Id. § 1508.4.  "In determining
whether an action will 'significantly' effect the environment, the CEQ
regulations provide certain factors that should be considered
[including], among others, (1) the degree to which the proposed action
affects public health or safety, (2) the degree to which the effects
will be highly controversial, (3) whether the action establishes a
precedent for further action with significant effects, and (4) whether
the action is related to other action which has individually
insignificant, but cumulatively significant impacts."  Alaska Ctr. for
the Env't v. U.S. Forest Serv., 189 F.3d 851, 859 (9th Cir. 1999)
(citing 40 C.F.R. § 1508.27(b)).

When an agency determines that a category of actions should
be categorically excluded from NEPA review, the agency must include in
its regulations "specific criteria for and identification of" actions
that qualify for the categorical exclusion, and must also "provide for
extraordinary circumstances in which a normally excluded action may
have a significant environmental effect."  Id. §§ 1507.3(b)(2)(ii),
1508.4.  "In such extraordinary circumstances, a categorically
excluded action would nevertheless trigger preparation of an EIS or an

3

EA." <u>California v. Norton</u>, 311 F.3d 1162, 1168 (9th Cir. 2002).
Furthermore, the agency must publish the proposed CE in the Federal
Register, provide an opportunity for public comment, and submit the CE
to the Council on Environmental Quality ("CEQ") for review and
approval.  40 C.F.R. § 1507.3(a); 48 Fed. Reg. 34,263, 34,265
(July 28, 1983).

        At issue is whether the USFS's Fuels CE and/or the
application of it to the Eldorado National Forest projects should be
set aside.  A court should "set aside [an agency's] actions, findings,
or conclusions if they are 'arbitrary, capricious, an abuse of
discretion, or otherwise not in accordance with the law.'" <u>Ocean</u>
<u>Advocates v. U.S. Army Corps of Eng'rs</u>, 361 F.3d 1108, 1118 (9th Cir.
2004) (quoting the Administrative Procedure Act ("APA") at 5 U.S.C.
§ 706(2)(A)).  "Courts apply a 'rule of reason' standard in reviewing
the adequacy of a NEPA document." <u>Klamath-Siskiyou Wildlands Ctr. v.</u>
<u>U.S. Bureau of Land Mgmt.</u>, 387 F.3d 989, 992 (9th Cir. 2004) (citing
<u>Churchill County v. Norton</u>, 276 F.3d 1060, 1071 (9th Cir. 2001)).
"Under this standard, we ask 'whether an [environmental review]
contains a reasonably thorough discussion of the significant aspects
of the probable environment consequences.'" <u>Churchill County</u>, 276
F.3d at 1071 (citation omitted).

        "The court must defer to an agency conclusion that is 'fully
informed and well-considered,' but need not rubber stamp a 'clear
error of judgment.'" <u>Anderson v. Evans</u>, 371 F.3d 475, 486 (9th Cir.
2004) (quoting <u>Blue Mountains Biodiversity Project v. Blackwood</u>, 161
F.3d 1208, 1211 (9th Cir. 1998)).  "If the adverse environmental
effects of the proposed action are adequately identified and
evaluated, the agency is not constrained by NEPA from deciding that

4

other values outweigh the environmental costs.  Thus the pertinent question for the Court is not whether [it] would have arrived at the same decision as that of the agency but merely whether the agency's decision was an informed one."  <u>Australians for Animals v. Evans</u>, 301 F. Supp. 2d 1114, 1120 (N.D. Cal. 2004).

       "District courts are not empowered to substitute their own judgment for that of the government agency."  <u>Id.</u> at 1122 (quoting <u>Wetlands Action Network v. U.S. Army Corps of Eng'rs</u>, 222 F.3d 1105, 1114 (9th Cir. 2000)).  The Court's "task in reviewing NEPA claims is simply to ensure that the procedure followed by the agency resulted in a reasoned analysis of the evidence before it, and that the agency made the evidence available to all concerned."  <u>Cold Mountain v. Garber</u>, 375 F.3d 884, 893 (9th Cir. 2004) (quoting <u>Friends of Endangered Species, Inc. v. Jantzen</u>, 760 F.2d 976, 986 (9th Cir. 1985)).

       Further, when considering "an agency's actions under NEPA . . . courts must also be mindful to defer to agency expertise, particularly with respect to scientific matters within the purview of the agency."  <u>Klamath-Siskiyou Wildlands Ctr.</u>, 387 F.3d at 993.  "When specialists express conflicting views, an agency must have discretion to rely on the reasonable opinions of its own qualified experts even if, as an original matter, a court might find contrary views more persuasive."  <u>Marsh v. Or. Natural Resources Council</u>, 490 U.S. 360, 378 (1989).

B.   <u>Factual and Procedural Background</u>

       In response to concerns about the fire risk created by the accumulation of hazardous fuels in many national forests, in August 2002, President Bush "established the Healthy Forests Initiative,

directing the Departments of Agriculture and Interior and the Council on Environmental Quality to improve regulatory processes to ensure more timely decisions, greater efficiency, and better results in reducing the risk of catastrophic wildfires by restoring forest help." 67 Fed. Reg. 77,038, 77,039 (Dec. 16, 2002).  "[T]he Departments of Agriculture and the Interior" responded to the Healthy Forests Initiative by "consider[ing] whether new categorical exclusions could be created for some of the fire management activities already undertaken by those Departments."  (Defs.' Mem. in Opp'n to Pls.' Summ. J. Mot. & Supp. Defs.' Summ. J. Mot. ("Defs.' Mot.") at 4-5.) "The Departments conducted an extensive review of over 2,500 past hazardous fuel reduction and rehabilitation projects in order to determine whether certain types of projects did not individually or cumulatively have significant environmental effects and could therefore form the basis for new categorical exclusions."  (Id. at 5; see 68 Fed. Reg. 33,814 (June 5, 2003).)  "The agencies also considered peer[-]reviewed scientific literature concerning the effects of hazardous fuel reduction activities."  (Defs.' Mot. at 5.) "Based on this project review, the Departments identified a set of limited hazardous fuel reduction and rehabilitation projects that would not normally have significant effects on the environment.  The Departments proposed these limited categories of projects as a new categorical exclusion in a Federal Register notice, and sought public comment and review and approval by CEQ."  (Id.; see 67 Fed. Reg. 77,038 (Dec. 16, 2002).)

After revising the categories in response to public and agency comments, on June 5, 2003, the USFS published the final Fuels CE in the Federal Register.  68 Fed. Reg. 33,814 (June 5, 2003).  The

Fuels CE delineates what actions are categorically excluded as follows:

• Hazardous fuels reduction activities using prescribed fire not to exceed 4,500 acres, and mechanical methods for crushing, piling, thinning, pruning, cutting, chipping, mulching, and mowing, not to exceed 1,000 acres. Such activities:

• Shall be limited to areas (1) in wildland-urban interface and (2) Condition Classes 2 or 3 in Fire Regime Groups I, II, or III, outside the wildland-urban interface;

• Shall be identified through a collaborative framework as described in "A Collaborative Approach for Reducing Wildland Fire Risks to Communities and the Environment 10-Year Comprehensive Strategy Implementation Plan;"

• Shall be conducted consistent with agency and Departmental procedures and applicable land and resource management plans;

• Shall not be conducted in wilderness areas or impair the suitability of wilderness study areas for preservation as wilderness;

• Shall not include the use of herbicides or pesticides or the construction of new permanent roads or other new permanent infrastructure; and may include the sale of vegetative material if the primary purpose of the activity is hazardous fuels reduction.

• Post-fire rehabilitation activities not to exceed 4,200 acres (such as tree planting, fence replacement, habitat restoration, heritage site restoration, repair of roads and trails, and repair of damage to minor facilities such as campgrounds) to repair or improve lands unlikely to recover to a management approved condition from wildland fire damage, or to repair or replace minor facilities damaged by fire. Such activities:

• Shall be conducted consistent with agency and Departmental procedures and applicable land and resource management plans;

• Shall not include the use of herbicides or pesticides or the construction of new permanent roads or other new permanent infrastructure; and

7

1            • Shall be completed within three years following
2        a wildland fire.

3  68 Fed. Reg. 33,814.

4        The CEQ reviewed the proposed categorical exclusions and
5  determined that they are "in conformance with NEPA and the CEQ
6  regulations."  (AR 78.)  "Plaintiffs challenge only that portion of
7  the CE which relates to projects designed to reduce hazardous fuels."
8  (Defs.' Mot. at 2.)

9        "In 2004, the USFS applied the Fuels CE to at least three
10  projects in the Eldorado National Forest[: the] Grey Eagle Fuels
11  Reduction (logging 984 acres and prescribed burning 4,149 acres);
12  [the] Forest Guard Fuels Reduction (logging and prescribed burning 412
13  acres); and [the] Rockeye Fuels Reduction Project (logging and
14  prescribed burning 513 acres)."  (Pls.' Mem. Supp. Summ. J. Mot.
15  ("Pls.' Mot.") at 6.)  "Plaintiffs also challenge the application of
16  the Fuels CE to [those] projects . . . ."  (Defs.' Mot. at 2.)

17                              II. ANALYSIS

18  A.  Motion to Supplement the Administrative Record

19        Plaintiffs move to supplement the administrative record with
20  several documents and expert declarations.  Plaintiffs argue this
21  supplementation is required because "judicial review of agency action
22  must be based on the 'full administrative record,' and [since] the
23  Forest Service omitted documents that were before the agency at the
24  time the Fuels CE was under review . . . ."  (Pls.' Mot. to Supplement
25  AR at 1.)  Plaintiffs also contend "the administrative record [should
26  be supplemented] to ensure that the agency considered all relevant
27  factors and to explain or clarify a technical matter; thus
28  guaranteeing a fair and effective judicial review of the agency

                                      8

1  action."   (Id.)

2      Since "Defendants do not oppose supplementation of the

3  record with the '10-Year Comprehensive Strategy Implementation Plan,'

4  . . . the Forest Service Handbook, . . . the Scoping Notices and

5  Schedule of Proposed Actions in the Eldorado and Lassen National

6  Forests . . . or the Healthy Forest Report[, and since the] series of

7  memoranda from the Forest Service Office of General Counsel . . . were

8  submitted to the Forest Service in public comments on the Forest

9  Service's decision to revise its extraordinary circumstances

10  provisions, and are appropriately part of the administrative record,"

11  those documents will supplement the record.   (Defs.' Opp'n to Mot. to

12  Supplement AR at 1-2.)

13      "Thus, the sole dispute [is] whether it is appropriate to

14  supplement the record with the declarations of [Craig] Thomas, [Dr.

15  Denis] Odion and [Monica] Bond."   (Id. at 2.)   "Generally, judicial

16  review of agency action is limited to review of the administrative

17  record."   Animal Def. Council v. Hodel, 840 F.2d 1432, 1436 (9th Cir.

18  1988).   "The task of the reviewing court is to apply the appropriate

19  APA standard of review, 5 U.S.C. § 706, to the agency decision based

20  on the record the agency presents to the reviewing court."   Fl. Power

21  & Light Co. v. Lorion, 470 U.S. 729, 743-44 (1985).   However,

22  supplementation is permitted: "(1) if necessary to determine whether

23  the agency has considered all relevant factors and has explained its

24  decision, (2) when the agency has relied on documents not in the

25  record, . . . (3) when [it] is necessary [for] expla[nation of]

26  technical terms or complex subject matter[, or (4)] when plaintiffs

27  [need it to] make a showing of agency bad faith."   Inland Empire Pub.

28  Lands Council v. Glickman, 88 F.3d 697, 703-04 (9th Cir. 1996)

9

1  (quoting <u>Friends of the Payette v. Horseshoe Bend Hydroelectric Co.</u>,

2  988 F.2d 989, 997 (9th Cir. 1993) & <u>Nat'l Audubon Soc'y v. U.S. Forest</u>

3  <u>Serv.</u>, 46 F.3d 1437, 1447 n.9 (9th Cir. 1993)) (internal quotation

4  marks omitted).

5      Plaintiffs argue the declarations of Odion, Bond, and Thomas

6  "will assist the Court in determining whether the Forest Service has

7  considered all relevant factors." (Pls.' Mot. to Supplement AR at

8  10.)  Plaintiffs contend the declarations

9          highlight the breadth of information the Forest
           Service was not privy to because the agency did
10         not do an environmental assessment or
           environmental impact statement before promulgating
11         the Fuels CE or approving the challenged projects.
           Second, they explain . . . how the Forest
12         Service's own administrative record demonstrates
           that the . . . [p]rojects will significantly
13         impact a number of sensitive species. Third, due
           to the incomplete information in the
14         Administrative Record regarding individual and
           cumulative impacts, two of the declarants
15         conducted a field visit to various units in the
           Project Areas and reviewed past, present and
16         reasonably foreseeable projects, so that
           [Plaintiffs] could explain to this Court the true
17         cumulative impacts of three of the challenged
           projects. Finally, the Declarations provide
18         background information that is needed to
           effectively review the Fuels CE and its
19         application to the challenged projects.

20  (<u>Id.</u> at 10-11.)

21      Further, Plaintiffs contend that "[t]he effectiveness of

22  fuel reduction activities on the spread of wildfire has been the

23  'subject of on-going scientific study by teams of researchers,

24  analyzing technical and complex environmental and biological

25  information' and Dr. Odion's declaration will be helpful to this court

26  by 'highlighting . . . deficiencies in the [Forest Service's]

27  environmental review process.'" (<u>Id.</u> at 11 (quoting <u>Env't Now! v.</u>

28  <u>Espy</u>, 877 F. Supp. 1397, 1404 (E.D. Cal. 1994)).)  Plaintiffs argue

"Dr. Odion's entire declaration demonstrates that the environmental review performed by the Forest Service in promulgating the Fuels CE and approving the . . . challenged projects was deficient because it did not consider a wealth of scientific information[; and therefore,] Dr. Odion's declaration will help this court determine whether the Forest Service has considered all relevant factors in promulgating the Fuels CE."  (Pls.' Mot. to Supplement AR at 11.)

Plaintiffs contend Monica Bond's declaration would "help explain why the Forest Service's decision making process was insufficient with regard to the agency's analysis of individual and cumulative environmental impacts for the challenged Eldorado Projects."  (Id.)  Plaintiffs contend "[t]he Declaration highlights that the Administrative Record is devoid of any information to support the Forest Service's allegation that the Fuels CE and the projects approved under it will have no significant impacts [and] demonstrates that the projects will have both individual and significant impacts on the California spotted owl."  (Id. at 11-12.)

Plaintiffs argue that "Craig Thomas'[s] Declaration provides background information that will assist this Court in determining whether the Forest Service has considered all relevant information[; and] provides background information on past, present, and future logging projects on both the Eldorado and Lassen National Forests." (Id. at 12.)  Furthermore, Plaintiffs contend these declarations will "explain and illuminate the complex scientific issues of fire and wildlife ecology."  (Id.)

Defendants argue the record should not be supplemented with Dr. Odion's testimony because that "testimony is in large part non-responsive to the actual projects being challenged, is mere expert

disagreement with the agency, and should have been submitted to the agency during the public comment periods." (Defs.' Opp'n to Mot. to Supplement AR at 6.)

Defendants object to Ms. Bond's declaration, arguing that it "constitutes little more than an articulation of her disagreement with the scientific conclusions reached by . . . the Forest Service's own wildlife experts," which should not be adjudicated. (Id. at 9.) Further, Defendants argue "Ms. Bond's testimony does not fall into any of the exceptions under which this Court may consider extra-record evidence, but instead disputes the agency's conclusions regarding the projects' impacts on the California spotted owl." (Id.)

Defendants also object to Mr. Thomas's declaration, arguing that it "provides no competent evidence that the Forest Service failed to consider all relevant factors, and indeed does not identify any 'past present and future logging projects' the agency failed to consider. Instead Mr. Thomas offers legal and scientific argument that he is not qualified to give." (Id. at 4.)

Finally, Defendants contend that if Plaintiffs' supplementation motion is granted, the record should also be supplemented with the following rebuttal declarations: "the declaration of Jeffrey Barnhart, responding to the allegations made in the declaration of Dr. Odion[;] the declaration of Charis Parker, responding to the allegations made in the declaration of Ms. Bond with regard to the Grey Eagle and Rockeye Projects[; and] the declaration of Jennifer Ebert responding to the allegations made in the declaration of Ms. Bond with regard to the Forest Guard Project." (Id. at 10.)

1    Since the declarations of Bond and Odion are offered to

2 assist the Court in determining whether the USFS considered all

3 relevant factors and to assist in explaining complex scientific

4 issues, Plaintiffs' motion to supplement the administrative record

5 with these declarations is granted.  Portions of the Thomas

6 declaration are also admitted for this purpose; but Thomas's legal

7 arguments and emotional distress arguments are excluded because they

8 are inappropriate expert opinions.  See Pac. Gas & Elec. Co. v. Lynch,

9 216 F. Supp. 2d 1016, 1027 (N.D. Cal. 2002) (granting motion to strike

10 a declaration "because th[e] declaration primarily contain[ed] legal

11 argument rather than evidentiary matter"); Metro. Edison Co. v. People

12 Against Nuclear Energy, 460 U.S. 766, 773-776 (1983) (stating that

13 "psychological health damage [is not] cognizable under NEPA").

14 Furthermore, Defendants' request that the Court consider its rebuttal

15 declarations is also granted.  See Tri-Valley Cares v. U.S. Dep't of

16 Energy, 2004 WL 2043034, at *3 (N.D. Cal. 2004) (granting "Defendants

17 leave to file rebuttal declarations because they had not had an

18 opportunity to respond to the extra record materials [and] Defendants'

19 response was essential to [its] review of the underlying motions.").

20 B.  Cross-Motions for Summary Judgment

21    Plaintiffs move for summary judgment, arguing that

22    the Forest Service's promulgation of the Fuels CE
      was arbitrary and capricious . . . because: 1) the
23    terms of the Fuels CE are contrary to 40 C.F.R.
      §§ 1508.4 and 1507.3, in that they do not specify
24    and identify adequately the actions to be covered,
      create an unlawful 'case-by-case' categorical
25    exclusion, and fail to establish properly
      'extraordinary circumstances'; and 2) the actions
26    to be covered are not appropriate for categorical
      exclusion under 40 C.F.R. § 1508.4 because they
27    have individual and/or cumulative significant

28

13

1
2

> effects; and the [USFS]'s findings of non-
> significance were arbitrary and capricious and
> contrary to the evidence before the agency.

3 (Pls.' Mot. at 1.)  Plaintiffs also contend that "the Fuels CE was not

4 in accordance with NEPA . . . because the [USFS] failed to prepare an

5 environmental assessment or environmental impact statement for the

6 Fuels CE prior to approving it" and "the Fuels CE cannot be applied to

7 the challenged timber projects in the . . . Eldorado National Forest

8 in California because they . . . involve individual and/or cumulative

9 significant effects."  (Id.)

10      Defendants counter that "[t]he Fuels CE was promulgated in

11 compliance with all law and regulations on the basis of an exhaustive

12 record, and the [USFS] properly determined that the . . . specific

13 projects challenged by Plaintiffs are covered by the Fuels CE."

14 (Defs.' Mot. at 41.)

15      1.   Was the promulgation of the Fuels CE in violation of NEPA?

16           a.   Does the Fuels CE violate the CEQ regulations?

17      Plaintiffs contend "the terms of the Fuels CE are contrary

18 to 40 C.F.R. §§ 1508.4 and 1507.3, in that they do not specify and

19 identify adequately the actions to be covered, create an unlawful

20 'case-by-case' categorical exclusion, and fail to establish properly

21 'extraordinary circumstances.'"  (Pls.' Mot. at 1.)  Defendants rejoin

22 that "the Departments have complied with all regulatory requirements

23 in promulgating the Fuels CE[: t]he CE identifies a specific class of

24 actions, and the Forest Service has appropriately defined the

25 extraordinary circumstances that would preclude authorizing a project

26 under the CE."  (Defs.' Mot. at 15.)

27      Plaintiffs contend "[t]he Fuels CE is contrary to

28 [1507.3(b)(2)(ii)] because the actions to be covered are not specified

14

1  or identified [and i]nstead, identification of the actions is left to
2  future, *ad hoc* determination." (Pls.' Mot. at 8.)  The CEQ
3  regulations require agencies promulgating a CE to include "[s]pecific
4  criteria for and identification of those typical classes of action"
5  which are covered by the CE.  40 C.F.R. § 1507.3(b)(2)(ii).
6  Plaintiffs argue there is noncompliance with this regulation because
7  "the Fuels CE states that the projects to be covered by it: '[s]hall
8  be identified through a collaborative framework as described in [the]
9  10-Year Comprehensive Strategy Implementation Plan[, which] does not,
10 however, "identify" the "category of actions" to be covered by a
11 categorical exclusion.'" (Pls.' Mot. at 8-9.)  Plaintiffs also argue
12 that "[t]he Fuels CE . . . does not define key terms used in the
13 categorical exclusion . . . ."  (Id. at 9.)

14     Defendants counter that "the Fuels CE sets forth in explicit
15 detail specific criteria for identifying the 'classes of action' to
16 which it applies." (Defs.' Mot. at 8.)  Defendants assert the Fuels
17 CE "is limited to projects designed to meet a specific purpose, the
18 reduction of hazardous fuels[; it is] limited to specific types of
19 treatments on specific acreages[;] projects may not use herbicides,
20 pesticides or involve construction of new roads or other permanent
21 infrastructure[; it] is limited geographically to the wildland-urban
22 interface or areas in fire condition classes 2 or 3 in Fire Regime
23 Groups I, II or III[; and it] cannot be applied to projects . . .
24 unless the project is identified through the collaborative process set
25 forth in the 10-Year Comprehensive Strategy Implementation Plan."
26 (Id. at 8-9 (citing 68 Fed. Reg. at 33,824).)  Defendants argue the
27 requirement that all projects under the Fuels CE be identified through
28 the 10-Year Comprehensive Strategy Implementation Plan's collaborative

1  framework "does not mean . . . that the CE can be broadened to include

2  projects outside the 'typical classes of action' identified in the CE;

3  it simply means that when determining where to implement a project and

4  what type of treatment methods to use – within the types already

5  authorized by the CE – the Forest Service will collaborate with state,

6  local and tribal governments."  (Defs.' Mot. at 9.)

7        Plaintiffs further contend that the Fuels CE creates a case-

8  by-case categorical exclusion, which is prohibited by 40 C.F.R.

9  §§ 1507.3(b)(2)(ii) and 1508.4, since "by leaving determination of

10 whether a project is covered by the Fuels CE to the process of the

11 '10-Year Comprehensive Strategy Implementation Plan,' the Fuels CE

12 refers to another, future decision-making process, which is itself

13 without specificity."  (Pls.' Mot. at 9.)  Plaintiffs support this

14 contention by citing to memoranda from the Department of Agriculture

15 Office of General Counsel ("OGC") for the proposition that case-by-

16 case categorical exclusions violate the CEQ regulations.  (Id. at 10.)

17 Defendants rejoin that Plaintiffs' argument fails because "[u]nlike

18 the CEs addressed in the OGC memoranda, the Fuels CE identifies a very

19 discrete and precise category of actions that may be included, and

20 unlike the true 'case-by-case' CEs criticized by the OGC, the Fuels CE

21 does not allow the Forest Service to categorically exclude, based on a

22 case-by-case determination of significance, other activities not

23 included in the CE."  (Defs.' Mot. at 13.)

24        Finally, Plaintiffs argue that the Fuels CE violates 40

25 C.F.R. § 1508.4, which requires categorical exclusions to "provide for

26 extraordinary circumstances in which a normally excluded action may

27 have a significant environmental effect."  40 C.F.R. § 1508.4.  The

28 USFS Handbook directs land managers to consider certain "resource

16

conditions" when determining whether the proposed action involves
extraordinary circumstances that warrant further environmental review.
67 Fed. Reg. 54,622, 54,627 (Aug. 23, 2002).  The "resource
conditions" include: threatened and endangered species or their
designated critical habitat, or USFS sensitive species; flood plains,
wetland, or municipal watersheds; wilderness areas; inventoried
roadless areas; research natural areas; Native American religious or
cultural sites; and archaeological or historical sites.  Id.
Plaintiffs contend the "provision for 'extraordinary circumstances in
the [USFS] Handbook . . . does not meet the requirements of 40 C.F.R.
§ 1508.4 because the [USFS] did not specify or identify the
extraordinary circumstances [but rather] qualified the definition and
application of the 'extraordinary circumstances exception based on the
'degree of potential effect' of an action on the 'resource
conditions.'"  (Pls.' Mot. at 11 (citing Exh. H at § 30.3(2)(a)).)
Plaintiffs argue "[o]nce a 'case-by-case' determination of
significance or degree of impact must be done . . . , the action
cannot be excluded from review with a categorical exclusion [and] must
be analyzed under an EA and FONSI or EIS."  (Pls.' Mot. at 11.)

        Defendants rejoin that the USFS properly designated
extraordinary circumstances.  Defendants contend that in determining
whether the proposed action involves extraordinary circumstances
warranting further analysis in an EA or EIS, land managers are
required to consider the resource conditions and "[i]f the responsible
official determines, based on the public scoping process, that it is
uncertain whether the project may have a significant effect, the
agency must prepare an EA, and if [the official] determines, . . .
based on public scoping, that it may have a significant effect the

17

1   agency must prepare an EIS." (Defs.' Mot. at 13-14.)  Defendants

2   argue "it is difficult to envision how any agency could comply with

3   the CE's requirement that the agency 'provide for extraordinary

4   circumstances in which a normally excluded action *may have* a

5   significant environmental effect,' 40 C.F.R. § 1508.4 (emphasis

6   added), without empowering decisionmakers to decide on a case-by-case

7   basis whether the circumstances present in each case actually involve

8   a potential significant effect.'" (Defs.' Mot. at 14.)  Defendants

9   also argue "the fact that other Federal agencies take the same

10  approach" and the fact that the approach was "reviewed by the CEQ

11  itself," indicates that the USFS's approach is "reasonable and

12  appropriate." (<u>Id.</u> at 15.)  Defendants also point to the CEQ's

13  notation "that the Forest Service efforts 'to clarify the effect of

14  the existence of extraordinary circumstances on the ability to

15  categorically exclude designated actions . . . is to be commended.'"

16  (<u>Id.</u> (citing AR 23).)

17          Plaintiffs disagree with Defendants' position, contending

18  that the Fuels CE violates the CEQ regulations, regardless of the CEQ

19  determination that the Fuels CE is "in conformance with NEPA and the

20  CEQ regulations." (AR 78.)  Specifically, Plaintiffs argue the Fuels

21  CE fails to properly identify the projects covered by the Fuels CE,

22  but the USFS identified specific criteria governing which actions fall

23  within the Fuels CE.  The CEQ "encourages the agencies to consider

24  broadly defined criteria which characterize types of actions that,

25  based on the agency's experience, do not cause significant

26  environmental effects." 48 Fed. Reg. 34,263, 34,265 (July 28, 1983).

27  Further, the fact that the particular projects will be identified by

28  the 10-Year Collaborative Implementation Strategy Plan does not

broaden the Fuels CE, it merely requires collaboration with state, local, and tribal governments.  Additionally, although Plaintiffs contend the Fuels CE is an invalid case-by-case categorical exclusion, it is permissible for an agency to determine, case by case, whether a particular action fits within a CE; NEPA only prohibits an agency from creating a new CE on a case-by-case basis.

Plaintiffs also challenge the Fuels CE's extraordinary circumstances provision; however, the USFS adequately defined extraordinary circumstances when it established the list of resource conditions.  Further, the CEQ specifically found that the USFS's extraordinary circumstances provisions "conform[] to [NEPA] and the CEQ regulations for implementing the procedural provisions of [NEPA]." (AR 46.)  "The CEQ's interpretation of NEPA is entitled to substantial deference" because CEQ is charged by Congress with the obligation of overseeing how federal agencies implement NEPA.  <u>Trustees for Alaska v. Hodel</u>, 806 F.2d 1378, 1382 (9th Cir. 1986) (citing <u>Andrus v. Sierra Club</u>, 442 U.S. 347, 358 (1979)).

For the stated reasons, Defendants prevail on their position and their motion for summary judgment is granted, and Plaintiffs' motion for summary judgment is denied.

b.  <u>Will the projects covered by the Fuels CE have cumulatively and/or individually significant effects on the environment?</u>

Plaintiffs also challenge the Fuels CE, arguing the Fuels CE is improper since the projects covered by it will have cumulatively significant effects on the environment.  (Pls.' Mot. at 12.)  By definition, a categorical exclusion is "a category of actions which do not individually or cumulatively have a significant effect on the

1   human environment."  40 C.F.R. § 1508.4.  Plaintiffs, relying on

2   Klamath-Siskiyou Wildlands Center, 387 F.3d at 993-94, for the

3   proposition that the total number of acres affected by a project "may

4   demonstrate by itself that the environmental impact will be

5   significant," argue "[t]he projects covered by the Fuels CE certainly

6   meet the Klamath-Siskiyou standard . . . ."  (Pls.' Mot. at 13.)

7   Plaintiffs contend, since "[t]here is no limitation on the number of

8   the times the Fuels CE can be invoked nationwide, in any particular

9   National Forest, or in any particular watershed . . . , many

10  individually insignificant (small) projects could be right next to

11  each other, or close enough to one another to have a combined or

12  cumulative effect on soils, water, fish and wildlife, without their

13  total cumulative effect being taken into account."  (Id. at 13-14.)

14  Plaintiffs contend the projects in the Eldorado National Forest are an

15  example of this problem.  (Id. at 14.)

16      Plaintiffs contend "the term 'significantly,' for purposes

17  of NEPA, requires the consideration of both context and intensity [and

18  that i]n evaluating intensity, the agency must consider the degree to

19  which effects are likely to be 'highly controversial.'"  (Id.)

20  Plaintiffs argue since "[a]pproximately 39,000 comments were submitted

21  regarding the Fuels CE, including thousands of comments relating to

22  the environmental impacts of the Fuels CE," the Fuels CE "is by

23  definition significant, and not an allowable CE under 40 C.F.R.

24  § 1508.4."  (Id. at 15.)  Finally, Plaintiffs argue that comparison of

25  the Fuels CE with other "longstanding categorical exclusions of the

26  agency" makes evident that the Fuels CE "is not a proper categorical

27  exclusion."  (Id.)

28

1    Defendants counter that the projects covered by the Fuels CE
2    will not have significant cumulative effects.  Defendants argue "the
3    Departments evaluated approximately 2,500 hazardous fuel reduction
4    projects nationwide before determining that the category of actions
5    described in the CE will not have significant cumulative effects on
6    the human environment."  (Defs.' Mot. at 15.)  Defendants argue
7    "[n]othing in Klamath-Siskiyou . . . stands for the proposition that
8    impacts on a large number of acres constitutes a per se significant
9    cumulative impact . . . ."  (Id. at 16.)

10    Defendants assert that Plaintiffs' concern about two
11    projects being "right next to each other" without their total
12    cumulative effects being taken into account, "is unfounded [since] CEQ
13    regulations prohibit an agency from the segmentation of projects into
14    pieces that, due to their small size, fall below the NEPA radar."
15    (Id. at 16-17.)  Furthermore, Defendants note that "[t]he Fuels CE is
16    not some sort of national program of hazardous fuels reduction
17    projects which would itself be subject to a NEPA analysis[; it] is
18    only a procedural device under NEPA which allows an agency to identify
19    existing categories of projects that from the agency's experience do
20    not normally have a significant impact [and its] only 'purpose' . . .
21    is to allow the agency to authorize low-impact projects which would
22    otherwise have had to have been evaluated under an EA."  (Id. at 17-
23    18.)

24    Defendants counter Plaintiffs' argument that the Fuels CE is
25    impermissible because it is highly controversial, stating "[t]he
26    appropriate inquiry . . . is not whether . . . the CE is
27    controversial, but whether there is sufficient controversy over the
28    degree of impacts of hazardous fuels reduction projects to suggest

21

they will have significant impacts and preclude their authorization
through the CE[; and, i]n this case there is not."  (Id. at 18.)
Furthermore, Defendants contend "[t]he receipt of a large number of
comments opposing a proposal does not render that proposal
controversial under NEPA."  (Id.)

Plaintiffs also contend the Fuels CE is "improper because
the class of actions includes individually significant projects."
(Pls.' Mot. at 16.)  Plaintiffs note that "[o]f the NEPA projects
contained in [the] data call, 28 individual projects had environmental
impact statements prepared for them, which meant the implementing
agency considered the projects' impacts significant."  (Id.)  Further,
Plaintiffs contend "[t]imber projects like those authorized under the
Fuels CE often have significant impacts, which is why EISs are
required for them."  (Id.)  Plaintiffs assert "[t]he record includes
numerous examples of fuel reduction projects that have significant
impacts," contending that "the fuel reduction projects named in the
Complaint serve as examples of projects with significant individual
effects that the Forest Service considers covered by the Fuels CE."
(Id. at 16-17.)

Defendants rejoin that "[t]he record . . . belies
[Plaintiffs'] claim."  (Defs.' Mot. at 19.)  Defendants contend that
although "of the 2,500 projects reviewed by the Departments, twelve
were found to have significant impacts[, t]his fact does not mean that
the Fuels CE includes projects with significant effects," because the
Departments found those twelve projects would not be covered by the
Fuels CE since they "involved extraordinary circumstances."  (Id.)

Defendants also argue that although "Plaintiffs list a
series of ecological impacts they assert are associated with fuel

reduction projects . . . , Plaintiffs fail to link any of these
alleged impacts to any of the 2,500 projects in the data set reviewed
by the Departments, and fail to point to anything arbitrary or
capricious in the Departments' conclusion that . . . 'none of the[]
environmental effects was individually or cumulatively significant
because the effects were localized, temporary, and of minor
magnitude.'"  (Id. at 20 (citing AR 155 at 8).)

Plaintiffs contend the public comments by state and federal
agencies demonstrate the individual and cumulative significance of the
projects covered by the Fuels CE. (Pls.' Mot. at 17.)  Specifically,
Plaintiffs assert that "[i]n their public comments to the Forest
Service, several States opposed the Fuels CE because of the direct and
cumulative environmental impacts."  (Id. at 17-18.)  Plaintiffs argue
"the Forest Service chose to approve the Fuels CE over the objections
of these state and federal agencies, and disregarded the evidence of
individual and cumulative harm they provided."  (Id. at 20.)

Defendants counter that "[t]he fact that other agencies
expressed concern, or even opposition to the proposal, does not carry
Plaintiffs' burden of proving the agency's action was arbitrary or
capricious."  (Defs.' Mot. at 20.)  Defendants note that "[t]he record
before the Court demonstrates that the Departments carefully evaluated
and responded to all public comments."  (Id. at 21.)

Plaintiffs disagree, contending the USFS's conclusion that
the impacts of the projects to be covered by the Fuels CE were not
individually or cumulatively significant was arbitrary and capricious.
(Pls.' Mot. at 21.)  Plaintiffs argue that the USFS's finding of no
significance "was based primarily on: 1) a review of scientific
literature on fuel reduction and forest fires; and 2) a "data call"

that consisted of a database of approximately 2,500 projects involving fuel reduction . . . ." (Id.)  Plaintiffs contend those sources "do not support the Forest Service's finding of no significant cumulative effect, and the Forest Service's reliance on them was arbitrary and capricious . . . ." (Id.)  Plaintiffs argue "[t]here was little or no analysis of the cumulative effects of fuel reduction projects — especially on the scale contemplated here — on fish, wildlife, water or soils [and t]he Forest Service did not review the scientific literature regarding the actual effects of fuels reduction activities on fish, wildlife, water or soils . . . ." (Id.)

Plaintiffs also contend the data does not support the USFS's finding of no cumulative significant impacts.  (Id. at 22-29.) Plaintiffs argue that

> there is a cumulative effects column in the Spreadsheet Compiling Data Call Records. . . . However, the spreadsheet does not state what other projects were considered in conjunction with any particular project – if any. There is no telling whether the projects were considered to be cumulative with other projects in the same watershed or in the same National Forest, much less cumulatively with all other projects in the "data call." Nowhere in the data call is there a "quantified assessment" of the combined environmental impacts from these projects.
>    Further, . . . the Forest Service did not determine how many projects it expects the Fuels CE to cover; the total acres it expects will be impacted; or the total amount of board feet of timber it expects to remove. The Forest Service provides no quantitative measure of cumulative "significance" in the promulgation of the Fuels CE; and no qualitative measure of cumulative "significance" in the promulgation of the Fuels CE. . . .
>    [T]he Forest Service . . . us[ed] the "data call" as a *post-hoc* rationale for an already made decision. The Forest Service's . . . analysis was not done objectively in good faith because the agency had already decided to issue a categorical exclusion. . . .

1         The data call . . . is insufficient . . .
2     because the determination of whether individual
    projects had "significant effects" is based on the
3     "personal observation" of individual Forest
    Service employees[;] a majority of the projects
that were reviewed were actually themselves analyzed in an EA or
4 EIS[;] the 1,000 and 4,500 acre figures the Fuels CE ultimately
established were arbitrary levels and not determinative of whether
5 there is significant individual or cumulative harm above that
threshold[;] the data call does not provide adequate information to
6 assess the impacts of these projects[; and because] many of the data
call projects were not hazardous fuel treatment reduction projects at
7 all. . . . . In sum, the data call does not support the conclusion that
the projects to be covered by the Fuels CE have no individual or
8 cumulative significant environmental effects.

9 (Id. at 23-29.)

10        Defendants rejoin the record supports the USFS's conclusion

11 that the Fuels CE will not have significant individual or cumulative

12 impacts.  Defendants assert that each of Plaintiffs' criticisms of the

13 USFS's methodology fails because "NEPA does not obligate an agency to

14 prepare an EIS or EA before promulgation of a CE, and the Plaintiffs

15 cannot seek [to] impose such a requirement through the backdoor by

16 asserting that the agency's evaluation of cumulative impacts must be

17 equivalent to that conducted in an EA or EIS."  (Defs.' Mot. at 21.)

18 Further, Defendants argue "the agencies complied with the CEQ's

19 directions [in 40 C.F.R. § 1507.3(b)(2), by] evaluating over 2,500

20 past hazardous fuel reduction projects to determine whether certain

21 types of projects did not individually or cumulatively have

22 significant environmental effects . . . ."  (Id. at 22.)  Defendants

23 contend they were therefore in the position to conclude "that the

24 class of projects included in the CE will not normally have

25 significant cumulative impacts."  (Id.)  Defendants contend "[t]here

26 is no evidence that the Departments did not act in good faith in

27 collecting and evaluating past hazardous fuel projects to develop the

28 fuels CE [and that t]he relevant legal inquiry is not whether the

25

Forest Service collected the data for a specific purpose, but whether the agency examined the data objectively and in good faith. . . ." (Id. at 22-23.)

Further, Defendants argue "the Forest Service was not required by either NEPA or the CEQ regulations to conduct any post-implementation monitoring before promulgating a CE [and] there is nothing inappropriate about the Forest Service's choice to utilize the observations of its trained and professional personnel as part of its methodology for reviewing the over the past fuel reduction projects." (Id. at 23-24.)  Defendants argue "the agency provides a rational explanation for its reliance on the observations of field personal: 'resource specialists and stakeholders involved in the design and analysis of each specific on-the-ground project were best qualified to identify resulting environmental effects or whether extraordinary circumstances were present.'" (Id. at 24 (citing AR 139 (68 Fed. Reg at 33,817)).)

Defendants also contend Plaintiffs "misunderstand . . . how the Departments reviewed the 2,500 projects in the study[; b]ecause the Departments reviewed the projects as they were finally implemented, those projects included whatever modifications or mitigation might have been made during the NEPA procedures." (Defs.' Mot. at 25.)

Defendants contend, although Plaintiffs assert the acreage limitations adopted in the CE are arbitrary, "the Departments made a reasonable finding based on the extensive record of past projects, and that finding must be upheld." (Id.)  Defendants note that the "USDA and DOI reviewed 2,500 hazardous fuels reduction projects for which the initial NEPA reviews predicted the environmental effects would not

be significant, and for which that prediction had been validated by post-implementation review[, and that a]fter reviewing th[e] data, and in response to public comment, the agencies determined [the acreage limitations for] the categorical exclusion." (Id.) Defendants contend the acreage limitations "are well within the range of acreages analyzed in the data" and "Plaintiffs point to nothing arbitrary or capricious in this approach. . . ." (Id.)

Finally, Defendants contend "the data collection form used by the Departments allowed personnel to describe significant impacts, and they were not limited to a 'binary' choice[;] the data used by the Agencies includes fuel reduction projects from a five year period, from 1998 through 2002[; and t]he inclusion of fuel reduction projects from grasslands is appropriate and should be upheld." (Id. at 25-26.)

Although Plaintiffs challenge the methodology used by the agencies, since Plaintiffs fail to demonstrate that the methodology used was "irrational," the methodology will be upheld. Marsh v. Or. Natural Resources Council, 490 U.S. at 378. Plaintiffs' contention that it was inappropriate for the USFS to use personal observations of agency experts in conducting its data call is unsupported; the USFS has not been shown unreasonable in relying on these expert opinions. Idaho Sporting Cong. v. Thomas, 137 F.3d 1146, 1150 (9th Cir. 1998) (stating that an agency is entitled to rely on its own expert opinions). Plaintiffs' contention that it was inappropriate for the USFS to use the data call "as a post-hoc rationale for an already made decision" is also unavailing. (Pls.' Mot. at 24) "[A]n agency can formulate a proposal or even identify a preferred course of action before completing an EIS." Metcalf v. Daley, 214 F.3d 1135, 1145 (9th Cir. 2000). Furthermore, the past projects were reviewed as

implemented, not as proposed; the acreage limits in the Fuels CE are supported by the record and the choice of acreage is within the agencies' expertise; the USFS's evaluation contained sufficient information about the appropriateness of the Fuels CE; and the projects included in the evaluation were sufficient.

The agencies reviewed over 2,500 hazardous fuels reduction projects and rehabilitation projects and considered peer-reviewed scientific literature concerning the effects of hazardous fuel reduction activities before identifying the category of actions that would not normally have significant effects on the environment. 68 Fed. Reg. 33,814 (June 5, 2003); AR 139. The USFS proposed the category of actions to be covered by the categorical exclusion in a Federal Register notice, and sought public comment and review and approval by CEQ. 67 Fed. Reg. 77,038 (Dec. 16, 2002); AR 135. Before the Fuels CE was adopted, the USFS considered and responded to numerous comments from the public. 68 Fed. Reg. at 33,815-33,823; 67 Fed. Reg. at 54,623-54,627. The USFS provided reasoned explanations for their conclusions that the category of actions covered by the Fuels CE would not normally have a significant impact on the environment. The USFS's determination that the projects covered by the Fuels CE would not have cumulative or individually significant impacts on the environment was not arbitrary and capricious. Therefore, Defendants' motion for summary judgment on this issue is granted and Plaintiffs' motion for summary judgment is denied.

        c.  <u>Did the USFS violate NEPA by failing to prepare an EA or an EIS for the Fuels CE?</u>

1     Plaintiffs argue "NEPA and its implementing regulations
2 require an EIS or at least an EA for the Fuels CE [since] the Fuels CE
3 is a 'major federal action[] significantly affecting the quality of
4 the human environment.'" (Pls.' Mot. at 30.) "[A]n EIS *must* be
5 prepared if 'substantial questions are raised as to whether a project
6 . . . may cause significant degradation of some human environmental
7 factor.'" Idaho Sporting Cong. v. Thomas, 137 F.3d 1146, 1149 (9th
8 Cir. 1998) (quoting Greenpeace Action v. Franklin, 14 F.3d 1324, 1332
9 (9th Cir. 1992)). Plaintiffs contend "[t]he Fuels CE . . .
10 constitutes a 'rulemaking' and NEPA analysis was required for it."
11 (Pls.' Mot. at 31.) Defendants counter "[n]either NEPA nor the CEQ's
12 regulations require preparation of an EIS when an agency develops a
13 categorical exclusion[, and] the caselaw squarely rejects
14 [Plaintiffs'] claim." (Defs.' Mot. at 27.)

15     Plaintiffs cite Kootenai Tribe of Idaho v. Veneman, 313 F.3d
16 1094 (9th Cir. 2002), and Citizens for a Better Forestry v. U.S. Dep't
17 of Agric., 341 F.3d 961, 969-70 (9th Cir. 2003), in support of their
18 argument that the USFS was required to prepare an EIS for the Fuels
19 CE. In Kootenai Tribe of Idaho, the Court held that the USFS was
20 required to prepare an EIS in promulgating the roadless area
21 conservation rule for national forests, since the rule immediately
22 altered substantive management of almost 60 million acres of land
23 without the need for any future decisions. In Citizens for Better
24 Forestry, the Court stated in dicta, that the agency erred in not
25 circulating for public comment the EA it prepared for its Forest
26 Planning Regulation, but the decision does not address the issue
27 whether an agency is required to prepare an EA or EIS when
28 promulgating a CE. 341 F.3d at 970.

29

1    Plaintiffs assert "NEPA and its implementing regulations
2    require an EIS or at least an EA for the Fuels CE" because "the Fuels
3    CE is a 'major federal action[] significantly affecting the quality of
4    the human environment.'"  (Pls.' Mot. at 30.)  Plaintiffs further
5    argue the Fuels CE should be characterized as "adoption of new agency
6    programs or regulations" and therefore "require[s] the preparation of
7    an EIS outright."  (Id. at 31 (citing 40 C.F.R. § 1508.18(b)(1), where
8    it is stated "Federal Actions requiring NEPA review include
9    '[a]doption of official policy, such as rules, regulations, and
10   interpretations adopted pursuant to the Administrative Procedure Act,
11   5 U.S.C. 551 et seq.'").)

12   However, neither NEPA nor the CEQ regulations require
13   preparation of an EIS when an agency develops a categorical exclusion.
14   As the Seventh Circuit stated in Heartwood, Inc. v. United States
15   Forest Service, 230 F.3d 947, 954 (7th Cir. 2000): "CEs are not
16   proposed actions, they are categories of actions for which an EA or
17   EIS has been deemed unnecessary . . . . For these procedures, the CEQ
18   does not mandate that agencies conduct an EA before classifying an
19   action as a CE and we must give great deference to the CEQ's
20   interpretation of its own regulations."  See also Trustees for Alaska,
21   806 F.2d at 1382 (stating "[t]he CEQ's interpretation of NEPA is
22   entitled to substantial deference.").  The CEQ's interpretation of its
23   own implementing regulations is "controlling" unless it is "plainly
24   erroneous or inconsistent with the regulation."  Robertson v. Methow
25   Valley Citizens Council, 490 U.S. 332, 359 (1989) (internal quotations
26   omitted).  The CEQ regulations specifically provide the procedures for
27   how agencies are to develop categorical exclusions: agencies must
28   publish all procedures for implementing NEPA in the Federal Register

and "the procedures shall be adopted only after an opportunity for
public review and after review by the [CEQ] for conformity with [NEPA]
and the[] regulations."  40 C.F.R. § 1507.3(a).  Here, the Final
Federal Register Notices for the Fuels CE explain that "establishing
categorical exclusions does not require preparation of a NEPA analysis
or document."  68 Fed. Reg. at 33,823.  Therefore, Plaintiffs' motion
for summary judgment on this issue is denied, and Defendants' motion
is granted.

    2.  <u>Does the application of the Fuels CE to the Eldorado National</u>
<u>Forest projects violate NEPA?</u>

     Plaintiffs also seek summary judgment on the issue that the
USFS unlawfully applied the Fuels CE to the projects in the Eldorado
National Forest.  (Pls.' Mot. at 31.)  Defendants counter that "[e]ach
of the challenged projects meets the specifications for inclusion in
the Fuels CE [and that f]or each project, the Forest Service undertook
public scoping to help identify potentially significant issues[;]
undertook studies of the proposed actions to determine whether
extraordinary circumstances were present that might preclude the use
of the Fuels CE[; and] provided a reasoned explanation for its
application of the Fuels CE to these projects and its determination
that no extraordinary circumstances were present."  (Defs.' Mot. at
30-31.)

     "If a proposed action fits within a categorical exclusion,
NEPA review is not required unless there are 'extraordinary
circumstances' related to the proposed action."  <u>Alaska Ctr. for the</u>
<u>Env't v. U.S. Forest Serv.</u>, 189 F.3d 851, 858 (9th Cir. 1999) (quoting
40 C.F.R. § 1508.4); <u>California v. Norton</u>, 311 F.3d at 1176 (noting
that "[i]n many instances, a brief statement that a categorical

exclusion is being invoked will suffice").  When determining whether a proposed action fits within a categorical exclusion, a "scoping process is used to 'determine the scope of the issues to be addressed and for identifying the significant issues related to a proposed action.'"  <u>Alaska Ctr. for the Env't</u>, 189 F.3d at 858 (citing 40 C.F.R. § 1501.7).  The arbitrary and capricious standard is applied "to an agency's determination that a particular action falls within [a] categorical exclusion[]."  <u>Bicycle Trails Council of Marin v. Babbitt</u>, 82 F.3d 1445, 1456 (9th Cir. 1996).  "When an agency decides to proceed with an action in the absence of an EA or EIS, the agency must adequately explain its decision. . . . To determine whether agency action is arbitrary or capricious, a court must consider 'whether the decision was based on a consideration of the relevant factors and whether there has been clear error of judgment.'"  <u>Alaska Ctr. for the Env't</u>, 189 F.3d at 859 (internal citations omitted).

Defendants argue the USFS reasonably determined there are no extraordinary circumstances related to any of the named projects.  Defendants contend "[f]or each of the projects challenged by Plaintiffs, the Forest Service determined and documented that no extraordinary circumstances exist that would preclude the use of the Fuels CE."  (Defs.' Mot. at 32 (citing AR 1917, 2371, 2759).)

Plaintiffs argue this finding was arbitrary and capricious because it "overlooked several important impacts of the projects and/or reached conclusions that were contrary to the evidence before the agency."  (Pls.' Mot. at 37.)  Plaintiffs contend this conclusion was reached "without considering the effect of other projects."  (<u>Id.</u> at 38.)  Plaintiffs also argue that "[a]lthough the three projects on the Eldorado National Forest were approved within months of each

other, none of the Decision Memos mention either of the other projects as either past, present or reasonably foreseeable projects." (Id. at 38.)  Plaintiffs contend "[n]umerous 'resource conditions' that could constitute 'extraordinary circumstances' are present within each project area." (Id. at 39.)

Further, Plaintiffs argue "[t]he Forest Service concluded that these projects would not significantly affect the resource conditions without considering the ten factors that define significance under the NEPA regulations." (Id. at 40 (citing 40 C.F.R. § 1508.27).) Plaintiffs argue "[i]nstead, the Forest Service makes conclusory statements that the projects will have no significant impacts." (Id.)

Specifically, Plaintiffs argue the Eldorado projects will have significant cumulative impacts on wildlife, water quality, and will not reduce fire risk.  Plaintiffs argue "[t]he Eldorado projects will degrade habitat for several sensitive species by simplifying mature forest stand structures, logging and removing trees up to 30" in diameter, and reducing the density of downed logs and snags [and] will adversely affect these species' ability to breed, feed, and shelter. . . ." (Id. at 32.)  Plaintiffs contend the USFS has not provided a convincing statement of reasons why potential effects on the California spotted owl are insignificant. (Id.; Bond Decl. ¶¶ 36-43.)  Furthermore, Plaintiffs argue "[t]he Eldorado projects include activities that will directly contribute to an increase in sediment in the watersheds, which adversely affects water quality and fisheries habitat." (Pls.' Mot. at 34.)  Plaintiffs also note that "the Forest Service's assertion that these projects will reduce wildfire potential is not supported in the record. In fact, projects such as this may

*increase* fire risk." (Id. at 35; Odion Decl.)  Plaintiffs also

contend the projects in the Eldorado National Forest will have

significant individual impacts on various species, including the

California spotted owl, and therefore use of the Fuels CE is

prohibited.  (Pls.' Mot. at 36; Bond Decl.)

Defendants rejoin: "Plaintiffs . . . err in suggesting that

the mere presence of a resource condition is sufficient to preclude

the use of a categorical exclusion." (Defs.' Mot. at 32.)  Defendants

note that "Forest Service implementing procedures for categorical

exclusions state that '[t]he mere presence of one or more of these

resource conditions does not preclude use of a categorical exclusion[;

i]t is the degree of the potential effect of a proposed action on

these resource conditions that determines whether extraordinary

circumstances exist.'" (Id. (citing 67 Fed. Reg. 54,622, 54,627 (Aug.

23, 2002)).)  Defendants argue "the Forest Service appropriately

considered both the presence of threatened or sensitive species and

cultural or archaeological sites and determined neither constitute

extraordinary circumstances precluding the use of the Fuels CE for any

of the challenged projects." (Defs.' Mot. at 32.)  Defendants assert

"[a] Biological Evaluation and Assessment (BEA) was prepared for each

project" which "examine[d] the direct, indirect, and cumulative

effects of the proposed action on sensitive and threatened wildlife

species and habitat if present in the project area." (Id. at 33.)

Defendants assert "[t]he Forest Service provided reasoned explanations

for its conclusions [and] each project will require limited operating

periods to protect known spotted owl and goshawk nest sites and

includes protection measures designed to minimize any potential

project effects." (Id. at 33-34.)  Defendants contend "[c]ontrary to

34

Ms. Bond's assertions, the Forest Service addressed cumulative effects to sensitive species and threatened species in its BEAs." (Id. at 34-35.)

Defendants also contend "[t]he Forest Service surveyed each project area for the presence of archaeological, historic, and cultural resource sites, and analyzed potential project effects to these sites for each.  The Forest Service set out specific protection measures that will be applied to these resources, including flagging and avoiding identified sites."  (Id. at 36.)

Finally, Defendants contend that although Plaintiffs assert the projects on the Eldorado National Forest will have significant cumulative impacts on water quality, and will not meet the USFS's goal of reducing the risk of fire, "these allegations should have been [made against] the promulgation of the Fuels CE as a whole, rather than [against] the specific named projects." (Id. at 37.)  Defendants also assert "even if Plaintiffs' allegations were properly raised against the specific projects, they are without merit." (Id.)

The issue is whether the USFS "provided a reasoned decision . . . specifically indicat[ing] that during the scoping process there were no extraordinary circumstances found that would warrant the preparation of an EA or EIS" for any of the Eldorado National Forest projects.  Alaska Ctr. for the Env't, 189 F.3d at 859.

For each of the projects Plaintiffs challenge, the USFS adequately determined and documented that no extraordinary circumstances exist which would require the preparation of an EA or an EIS.  (AR 1916, 2371, 2759.)  The USFS prepared a BEA for each project which evaluated the direct, indirect, and cumulative effects of the proposed action on sensitive and threatened wildlife species, and

1   habitat if present in the project area.  (AR 1946-60, 2381-2412, 2459-

2   61, 2792-2817.)  The USFS specifically considered the effects on the

3   California spotted owl.  (AR 1956, 2406, 2803.)  The USFS then

4   determined there would be no long-lasting effects, and any effects

5   would be minimized by using limited operating periods, and prepared

6   reasoned explanations for these conclusions.  (AR 1167, 1912, 1917,

7   2366, 2754-55, 2759.)

8          In its BEAs, the USFS also surveyed each project area for

9   the presence of archaeological, historical, and cultural resource

10  sites; analyzed potential effects at these sites; set out specific

11  protection measures to be applied at the sites; and then reasonably

12  concluded the proposed projects will not have a significant effect on

13  those sites.  (AR 1162-63, 1166-67, 1912-13, 2014, 2367, 2754-55,

14  2764.)  The USFS also conducted a Riparian Conservation Objectives

15  Analysis for each project and adequately explained its conclusion that

16  the projects would not have a significant effect on water quality or

17  aquatic habitat.  (AR 1968, 2460.)  Finally, although Plaintiffs

18  contend the projects could increase fire risk (see Sierra Club v.

19  Eubanks, 335 F. Supp. 2d 1070 (E.D. Cal. 2004), and Odion Decl.), the

20  USFS adequately explained that the Eldorado National Forest projects

21  involve understory thinning designed to reduce the intensity and

22  severity of fire once it starts.  (AR 1908, 2361, 2751.)

23          "Employing the deferential standard of review, which . . .

24  must [be used] when reviewing factual conclusions within the agency's

25  expertise, [I] conclude that the Forest Service considered the

26  relevant factors and determined that no extraordinary circumstances

27  were present.  Accordingly, the Forest Service did not violate NEPA."

28  Alaska Ctr. for the Env't, 189 F.3d at 859.

<u>III.  CONCLUSION</u>

For the foregoing reasons, Plaintiffs' motion for summary judgment is denied and Defendants' motion for summary judgment is granted.  The Clerk of the Court shall enter judgment in favor of Defendants and against Plaintiffs.

IT IS SO ORDERED.

DATED:  September 16, 2005

<u>/s/ Garland E. Burrell, Jr.</u>
GARLAND E. BURRELL, JR.
United States District Judge

37